## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------- x
In re:                                           :     Chapter 11
                                                 :
MALLINCKRODT PLC, et al                          :     Case No. 20-12522 (JTD)
                                                 :     (Bankr. D. Delaware)
                          Debtors.               :     (Jointly Administered)
------------------------------------------------- :
SANOFI-AVENTIS U.S. LLC,                          x
                                                 :
                          Appellant,             :
v.                                               :
                                                 :     C.A. No. 1:21-cv-01636 (TLA)
MALLINCKRODT PLC, et al.,                         :
                                                 :     ORAL ARGUMENT
                          Appellees.             :     REQUESTED
------------------------------------------------- x
```

## OBJECTION OF APPELLANT SANOFI-AVENTIS U.S. LLC
## TO REORGANIZED DEBTORS' MOTION
## TO DISMISS APPEAL AS EQUITABLY MOOT

Appellant sanofi-aventis U.S. LLC ("**Sanofi**") respectfully submits this

objection to the *Reorganized Debtors' Motion to Dismiss Appeal as Equitably Moot*

[D.I. 21] ("**Motion**") filed by Mallinckrodt plc and its affiliated reorganized debtors

(in their capacities prior to and following the Effective Date of the Joint Plan, as

defined below, the "**Debtors**"), in the above-captioned appeal ("**Appeal**") from the

United States Bankruptcy Court for the District of Delaware ("**Bankruptcy**

**Court**").  In support of its objection, Sanofi respectfully states as follows:

## PRELIMINARY STATEMENT

This Appeal does not challenge confirmation of the Debtors' chapter 11 plan ("**Joint Plan**") and granting the relief requested in this Appeal will have at best a marginal impact on implementation of the Joint Plan.  The equitable mootness doctrine is a limited equitable principle that only applies in situations where granting relief on appeal would necessarily require an "unscrambling" of complex chapter 11 reorganizations.  Based on the relief sought in this Appeal and the Debtors' previous admissions, the equitable mootness doctrine has no relevance to this Appeal.

The Joint Plan provides for the discharge of claims against the Debtors.  11 U.S.C. § 1141(d).  If Sanofi prevails in this Appeal, the Debtors will continue to receive the benefit of the discharge provided by the Joint Plan.[1]  The fact that the Joint Plan became effective does not preclude this Court from determining whether future royalties arising from the Debtors' post-confirmation sale of Acthar Gel constitute "debts that arose before the date of confirmation," or as Sanofi submits, they are future obligations that are not discharged.  Notably, the Debtors admit that a ruling adverse to them in this Appeal would simply render the Debtors liable to pay the post-confirmation Royalties, as defined below.

---

[1]     Through this Appeal, Sanofi does not challenge the Debtors' exit financing or the various settlements entered into by the Debtors to achieve confirmation.

The Debtors fail to identify a single case where any court has applied the equitable mootness doctrine to dismiss a similarly situated appeal, *i.e.*, whether an obligation constitutes a pre-petition debt subject to discharge by a plan or a post-confirmation obligation that is not.  Sanofi has found no such case.  Indeed, recognizing the nature of this dispute, in their pleadings filed with the Bankruptcy Court related to this very matter, the Debtors argued the opposite position they now take in the Motion, namely, that disputes of this sort are typically decided *after* confirmation.[2]  These judicial admissions should bind the Debtors and preclude any assertion of equitable mootness in this Appeal.

Moreover, the Debtors fail credibly to show how granting relief in this Appeal could possibly "unscramble" the implementation of the Joint Plan.  The Joint Plan provides for a general discharge of pre-petition debts.  The Debtors' argument that requiring them to honor their future royalty obligations could jeopardize the Joint Plan, is disingenuous.[3]  The Debtors' position now contradicts their prior argument to the Bankruptcy Court in which the Debtors unequivocally asserted that this dispute is not material to confirmation.[4]  The Debtors represented to the Bankruptcy

---

[2]      *See* Objection, *infra*, ¶6.

[3]      *See* Motion, at 13-14.

[4]      *See* Objection, *infra*, ¶2.

Court they could simply continue paying the Royalty post-confirmation, if this Appeal is determined in Sanofi's favor.[5]

Further, disproving any alleged third-party reliance, the Debtors' solicited Disclosure Statement (as defined below) made no mention whatsoever of any intended discharge of future royalty obligations; on the contrary, the only mention of royalties was in a footnote to the Debtors' projections that royalties are included as part of the "cost of goods sold."  Parties reviewing the Disclosure Statement were justified in believing that the Debtors would continue to honor their post-confirmation royalty obligations in the ordinary course of business.

In overruling Sanofi's motion for a stay pending appeal of the confirmation order,[6] where Sanofi *does* seek reversal of a limited aspect of implementation of the UCC Settlement embodied in the Joint Plan, this Court ruled that the potential for equitable mootness did not pose a risk of irreparable harm, because "while the issue is not squarely before me, I do not see how equitable mootness would apply under the circumstances presented by these appeals."[7]  The instant Appeal is even further removed, as it does not challenge implementation of the UCC Settlement or the Joint Plan.  In fact, reversal of the Appealed Order would likely render moot Sanofi's

---

[5]     *Id.*, ¶6.

[6]     Memorandum Opinion, Case No. 22-216-TLA, Dkt. No. 41 (D. Del. April 22, 2022)

[7]     *Id.*

4

second appeal (Case No. 22-216-TLA), as well as the pending and anticipated contested matters involving Sanofi's filed proofs of claim.  Because the equitable mootness doctrine does not apply, the Motion should be denied.

## BACKGROUND

### A. Sanofi's Pre-Confirmation Motion

On October 12, 2021, Sanofi filed its *Expedited Motion for Pre-Confirmation Determination that Debtors Cannot Reject or Discharge Post-Confirmation Royalty Obligations Related to Sale of Acthar Gel* [Bankr. D.I. 4675 and 4676] ("**Pre-Confirmation Motion**" or "**Motion to Expedite**", as applicable).

On October 13, 2021, the Debtors filed an objection to the Motion to Expedite [Bankr. D.I. 4693] ("**Objection**"). In that Objection, the Debtors asserted that the relief requested in the Pre-Confirmation Motion could have a "tangible effect on the value of the Debtors' post-emergence enterprise. . ." but that "the Debtors *do not* expect that the [Pre-Confirmation Motion] being granted or denied *would cause any material change* to their confirmation case or to the confirmability of the Debtors' chapter 11 plan."  Objection, ¶2 (emphasis added).

The Debtors also stated that "the Debtors do not agree that the [Pre-Confirmation Motion] must be heard before confirmation.  The fundamental dispute between the parties regards their contract, and the resolution of the relevant issues . . . *would not have any meaningful consequence* to the Debtors' confirmation case

– it being understood that, of course, if the Debtors are legally prohibited from selling Achar unless they pay the Movant's royalty, ***the Debtors would continue to pay***. *Id.*, ¶6 (emphasis added).  The Debtors continued:  "***This is the type of dispute frequently reserved for and heard after confirmation of a plan***." *Id.* (emphasis added).

The Bankruptcy Court issued its bench ruling on the Pre-Confirmation Motion on November 4, 2021, and on November 8, 2021, entered the *Order in Connection with Expedited Motion for Pre-Confirmation Determination that Debtors Cannot Reject or Discharge Post-Confirmation Royalty Obligations Related to Sale of Acthar Gel* [Bankr. D.I. 5210] ("**Appealed Order**").  The Appealed Order makes no reference to the Joint Plan; instead, the Appealed Order's operative and relevant ruling provides that "Sanofi's claims for post-Petition breaches of the APA, including for payment of any royalties thereunder, by the Debtors constitute pre-Petition Date unsecured claims that may be discharged under the Bankruptcy Code." Appealed Order, ¶3.

## B. The Debtors' Joint Plan and Disclosure Statement

On June 18, 2021, the Debtors filed the "solicitation version" of the disclosure statement for their chapter 11 plan [Bankr. D.I. 2917] ("**Disclosure Statement**"). The Disclosure Statement made no mention of Sanofi or the Royalty, and it did not include any discussion regarding the Debtors' intention to emerge from bankruptcy

6

with the ability to continue selling Acthar Gel without paying the Royalty.  On the contrary, the Debtors' projections attached to the Disclosure Statement expressly acknowledge that the "cost of goods sold . . . includes standard costs ….  In addition, it includes other cost of sales such as *royalty expenses*…." Disclosure Statement, Ex. D, p. 737 (emphasis added).  The Debtors now assert that they did not include Sanofi's Royalty in their projections, which fact is not part of the record on this Appeal and it was not part of the separate confirmation record.  The Debtors point to no evidence that any third party knew of, let alone relied on, the newly alleged exclusion of the Royalty from the projections.

After entry of the Appealed Order, the Bankruptcy Court commenced the confirmation hearing.  The Bankruptcy Court entered an order confirming the Joint Plan on March 2, 2022 [Bankr. D.I. 6660], and the Joint Plan became effective on June 16, 2022 ("**Effective Date**") [Bankr. D.I. 7652].  Neither the Joint Plan, nor the confirmation order reference the Pre-Confirmation Motion, the Royalty, or the Debtors' ability to sell Acthar Gel post-confirmation without paying the Royalty.

### C. The Debtors' Motion to Dismiss

On July 1, 2022, the Debtors filed the instant Motion, seeking to dismiss this Appeal, arguing the Appeal is equitably moot.  Despite their prior admissions to the Bankruptcy Court that the type of dispute presented by the Pre-Confirmation Motion is frequently addressed post-confirmation, i.e., would not be subject to equitable

7

mootness, that requiring the Debtors to continue to honor the Royalty would not cause a "material change" and would "would not have any meaningful consequence,"[8] the Debtors now reverse course and argue that granting relief to Sanofi in this Appeal would significantly harm third parties and would "scramble the plan." The Motion should be denied.

## **ARGUMENT**

### A. The Motion is Barred by the Doctrine of Judicial Admission

"Judicial admissions are 'admissions in pleadings, stipulations [or the like] which do not have to be proven in the same litigation.'" *Anderson v. C.I.R.*, 698 F.3d 160, 167 (3d Cir. 2012) (citing *Giannone v. U.S. Steel Corp.*, 238 F.2d 544, 547 (3d Cir. 1956). "To be binding, judicial admissions 'must be statements of fact that require evidentiary proof, not statements of legal theories.'" *Anderson*, 698 F.3d at 167 (citing *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 377 (3d Cir.2007)).

The Debtors have unequivocally admitted that this dispute was not material for confirmability of the Joint Plan, that they could continue paying the Royalty if required by a court to do so, and that the kinds of issues presented in this Appeal are routinely addressed post-confirmation. These binding, judicial admissions negate a fundamental element of the equitable mootness doctrine – that relief on appeal would

---

[8]      Objection, ¶¶ 2, 6.

fatally scramble a consummated plan.  For this reason alone, the Motion should be denied.

The Debtors judicial admissions are a fatal blow to their current argument that Sanofi prevailing in this appeal could scramble the Joint Plan. The underlying premise of the Motion directly contradicts their prior admission that similar disputes are routinely taken up post-confirmation.  Equitable mootness has no bearing on this Appeal.

## B. Equitable Mootness Only Applies to Appeals of Confirmation Orders

"'Equitable mootness' is a narrow doctrine by which an appellate court deems it prudent for practical reasons to forbear deciding an appeal when to grant the relief requested will undermine the finality and reliability of consummated plans of reorganization." *In re Tribune Media Co.*, 799 F.3d 272, 277 (3d Cir. 2015) (internal citations omitted).  "The judge-made origin of the equitable mootness doctrine, coupled with the responsibility of federal courts to exercise their jurisdictional mandate, obliges a court to proceed most carefully before dismissing an appeal as equitably moot." *In re Semcrude, L.P.*, 728 F.3d 314, 318 (3d Cir. 2013). Equitable mootness is considered "following confirmation of a reorganization plan" in connection with an appeal of the bankruptcy court's confirmation ruling.  *In re One2One Commc'ns, LLC*, 805 F.3d 428, 433 (3d Cir. 2015).  "In practice, equitable mootness proceeds in two analytical steps: '(1) whether a confirmed plan has been

substantially consummated; and (2) if so, whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on the plan's confirmation.'" *Id.* at 434-35 (citing *Semcrude*, 728 F.3d at 321).

"The party seeking to invoke the doctrine bears the burden of overcoming the strong presumption that appeals from confirmation orders of reorganization plans – even those not only approved by confirmation but implemented thereafter … need to be decided." *Tribune*, 799 F.3d at 277-78. "Before there is a basis to avoid deciding the merits of an appeal, [the court] must first determine that granting the requested relief is almost certain to produce a "perverse" outcome—significant 'injury to third parties' and/or 'chaos in the bankruptcy court' from a plan in tatters." *One2One,* 805 F.3d at 434, (citing *In re Phila. Newspapers, LLC*, 690 F.3d 161, 168 (3d Cir. 2012)).

### 1. *This Appeal Does Not Challenge Confirmation of the Joint Plan*

As a threshold matter, the Motion should be denied because the Debtors seek to invoke the equitable mootness doctrine as a result of consummation of the Joint Plan, but they ignore that this Appeal does not challenge confirmation of the Joint Plan. On the contrary, in this Appeal, Sanofi challenges only the Appealed Order,

10

which was entered before the confirmation hearing began, did not relate to a confirmation objection, and does not even reference the Joint Plan.[9]

Likewise, this Appeal cannot be said to be "inextricably intertwined" with implementation of the Joint Plan. *See In re Continental Airlines*, 91 F.3d 553, 561 (3d Cir. 1996) (rejecting argument that appeal would not disturb reorganization where issue was "inextricably intertwined with implementation of the reorganization."). In their Motion, the Debtors set forth a list of fourteen transactions that the Debtors undertook to implement the Plan. Motion at 8-9. None of these transactions relate to Sanofi, the Royalty, the post-confirmation manufacture, distribution or sale of Acthar Gel, or the reorganized Debtors' obligation to honor the Royalty with respect to post-confirmation sales. The Debtors' Motion is devoid of any evidence, however, that any significant party to any material transaction implementing the Joint Plan lacked knowledge of the pendency of this Appeal and would not have entered into such transaction were the cost of goods sold increased by 1% of net sales. The Debtors cannot credibly assert that any aspect of their implementation of the Joint Plan relates to this Appeal, let alone is "inextricably intertwined" with it.

---

[9]     Appealed Order, ¶3 (discussing discharge under the Bankruptcy Code, not under the Joint Plan).

11

### 2. *This Appeal Will Not Fatally "Scramble" the Joint Plan*

The Joint Plan will not be affected in any material way if Sanofi prevails in this Appeal, let alone be "fatally scrambled" or "left in tatters."  The Debtors fail to identify a single provision of the Joint Plan or the confirmation order that would be affected by this Appeal.  This Appeal does not challenge the opioid settlements, the Debtors' balance-sheet restructuring, or even the treatment of unsecured creditors like Sanofi.  The Debtors fail to credibly articulate how an appeal that does not challenge any aspect of a confirmed plan could possibly scramble (let alone "fatally scramble") that plan.  For example, the Debtors' bankruptcy docket reflects the filing of seventeen (17) statewide abatement agreements in the last month with various state governments filed by the National Opioid Abatement Trust II appointed under the Joint Plan.[10]  The Debtors do not contend that any of these abatement agreements would be jeopardized if Sanofi prevails in this Appeal

The Joint Plan grants the Debtors a discharge to the extent permitted by section 1141(d) of the Bankruptcy Code. Sanofi does not challenge the discharge provision, but only seeks an appellate determination that future Royalties arising if and when the Debtors sell Acthar Gel post-confirmation fall outside the scope of such discharge.  This cannot be said to "scramble" anything in the Joint Plan.

---

[10]    *See*, *e.g.*, Bankr. D.I. 7696, 7697, 7710, 7725, 7727, 7728, 7736, 7812, 7820, 7823, 7824, 7848, 7849, 7850, 7851, 7857, 7858 and 7865,

### C. The *Continental* Factors are Inapplicable to this Appeal, But Otherwise Support Denial of the Motion

In determining whether to apply the doctrine of equitable mootness, courts in this Circuit typically consider the following factors: "(1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments." *Tribune*, 799 F.3d at 278 (citing *Continental*, 91 F.3d at 560).  While the Debtors focus on these factors in the Motion, they ignore that such factors have no application to an appeal that does not challenge or arise from confirmation of a chapter 11 plan.  Nevertheless, even if they are applicable, the Debtors fail to meet their burden.

Further, the *Continental* "factors are given varying weight, depending on the particular circumstances." *Phila. Newspapers*, 690 F.3d at 168 (citing *In re PWS Holding Corp.*, 228 F.3d 224, 236 (3d Cir. 2000).  Under the circumstances here, including that the Appeal does not relate to confirmation of the Joint Plan and does not challenge any aspect of the Joint Plan, the third (harm to third parties) and fourth (impact on success of the plan) factors should be afforded greater weight.

**Substantial Consummation.**  Sanofi takes no position as to whether the Joint Plan has been substantially consummated.

**Stay Pending Appeal.** Sanofi did not seek a stay pending appeal after entry of the Appealed Order. Sanofi did not seek a stay of implementation of the Confirmation Order (in connection with this Appeal) because the transactions to be undertaken on the Effective Date did not include any actions related to this Appeal. As discussed above, the Joint Plan merely provides for a discharge of pre-petition claims. Sanofi does not challenge this aspect of the Joint Plan, but only whether Royalties from post-confirmation sales constitute pre-petition claims. Because Sanofi does not challenge the Joint Plan (in this Appeal), a stay pending appeal would have been inappropriate. The Debtors fail to point to any case where an appeal from an order entered separately from confirmation of a plan was dismissed as equitably moot, because the appellant failed to seek and obtain a stay of a separate, later-entered, unrelated confirmation order. Such a case does not exist.

**Harm to Third Parties.** Unlike the confirmation proceedings, as to which multiple parties in the Debtors' bankruptcy cases participated (both in support of and in opposition to confirmation), only Sanofi and the Debtors litigated the Pre-Confirmation Motion. No other party has sought to intervene in this Appeal.[11] If Sanofi prevails in this Appeal, only the Debtors immaterially will be affected, as

---

[11] This is in contrast with Sanofi's pending Confirmation Appeal, which *does* arise from the Bankruptcy Court's confirmation ruling, as to which five other parties in addition to the Debtors sought and were granted leave to intervene as appellees. As noted above, reversal of the Appealed Order would likely render the Confirmation Appeal moot.

EAST\188671581.6

they will be required to continue paying the Royalty for post-confirmation sales of Acthar Gel.[12]  Sanofi has not asserted that any parties other than the Debtors are liable for the Royalty.

On the other hand, a large number of third parties will directly benefit if Sanofi prevails in this Appeal.  Sanofi's claims are classified in Class 6(f) of the Joint Plan, one of several classes that share in the recovery from the "UCC Settlement."[13]  As a result of the Bankruptcy Court's ruling in the Appealed Order, Sanofi's claims against the Debtors currently include claims for projected future Royalty Obligations – resulting in a total asserted claim of at least $189 million.  If Sanofi prevails in this Appeal, however, Sanofi's claims for projected future Royalty obligations will no longer be included and will not dilute the recovery for the other Class 6 creditors.[14]

Undeterred, the Debtors argue that being required to honor their post-confirmation contractual obligations to Sanofi will harm third parties who have

---

[12]    The Debtors also assert that a ruling in Sanofi's favor may result in Sanofi being allowed an administrative expense claim that must be paid under the Joint Plan.  While Sanofi has asserted an administrative expense claim for Royalty obligations arising during the course of the Debtors' bankruptcy cases, no objections have been filed to such claims and those claims are not at issue in this Appeal.

[13]    The UCC Settlement, as defined in the Joint Plan, is the settlement with the Official Committee of Unsecured Creditors that carved out certain of the Debtors' assets to fund distributions to unsecured creditors in the several subclasses of Class 6 in the Joint Plan.

[14]    Sanofi's proofs of claim filed after entry of the Appealed Order are already subject to pending litigation in the Bankruptcy Court, which would likely be rendered moot if Sanofi prevails in this Appeal.

chosen to invest in the Debtors.[15] But the Debtors cannot demonstrate that any such party relied on the Bankruptcy Court's ruling on the Pre-Confirmation Motion in deciding whether to consummate an Effective Date transaction, such as providing exit financing or entering into opioid agreements, especially as there is no discussion of the discharge of the Royalty in the Joint Plan, or in the solicited Disclosure Statement, or in the confirmation record. Rather, the solicited Disclosure Statement expressly represents that royalty obligations are part of the "Cost of Goods Sold." Moreover, this Appeal is clearly reflected on the docket of the Debtors' bankruptcy cases. There is no evidence that any "investments", as referred to by the Debtors, were underwritten in reliance on the Debtors' success in this Appeal, and significantly no evidence that the Debtors will be in breach of any such transactions if the Debtors do not prevail in this Appeal.[16] Against these facts, any argument (all

---

[15]    Specifically, the Debtors now aver, without an evidentiary basis, that, even though the projections in the Disclosure Statement expressly say that royalties are included as part of the "cost of goods sold," those projections did not include the Royalty for Sanofi. This exclusion was not expressed in the Disclosure Statement or otherwise made a part of the record below, further negating any alleged "reliance" by third parties.

[16]    A recent published analysis concluded that, as of June 16, 2022, the Debtors had "liquidity of approximately $397 million, based on $200 million of availability under the company's new receivables securitization facility, less a reported $34.7 million of letters of credit outstanding as of April 1, plus estimated unrestricted cash of $232 million, based on company-projected cash at emergence of bankruptcy of $482 million, less $250 million of additional cash needed to pay down the company's revolver." *See Mallinckrodt plc – Covenants Tear Sheet (as of 6/16/22)*, Jeff Brenner, REORG, July 20, 2022.

of which are presented without evidentiary support) that third parties relied on an anticipated future ruling by the Bankruptcy Court with respect to the Royalty must fail.

The Joint Plan merely provides that pre-petition claims would be discharged, which establishes the outer limit of what third parties may have relied upon.  If the Court agrees that Royalties arising from the Debtors' voluntary post-confirmation sales of Acthar Gel do not constitute pre-petition claims, then any reliance by third parties was inherently unreasonable.  Similar third-party reliance issues were addressed in *Millennium*, where the Court found that parties had relied on third-party releases that were "integral to the restructuring of the debtor-creditor relationship." *In re Millennium Holdings II, LLC*, 945 F.3d. 126, n.8.  The opioid settlements and resolution of other burdensome litigation and investigations may be integral to the Joint Plan – but the Debtors' attempt to avoid paying their modest contractual Royalty on post-confirmation net sales of one product is not.  Under these circumstances, and given the lack of evidence provided by the Debtors in support of the Motion, there is no basis to conclude that any third party relied on discharge of the Royalty as an integral part of confirmation of the Joint Plan.

**Impact on Success of the Plan**.  The disposition of this Appeal will have no impact on the success of the Joint Plan.  As noted above, the Debtors judicially admitted that being required to pay the Royalty would not affect confirmability, and

17

therefore, would not render the Joint Plan infeasible. The Debtors commenced their bankruptcy cases to address their opioid and other litigation and governmental investigations.  The success that the Debtors achieved in addressing these issues is not challenged or jeopardized by this Appeal. The Debtors do not and cannot assert that if they are required to pay a 1% Royalty on net sales of Acthar Gel then they would have to forego any of the substantive relief that they have obtained through the Joint Plan or would be in breach of any of their obligations or covenants arising from consummation of the Joint Plan.

Moreover, the Debtors readily admit in their pleadings to the Bankruptcy Court that if they may not legally continue selling Acthar Gel without paying the Royalty, then they are able to and will pay it.  The Debtors do not represent anything to the contrary in the Motion.  This aligns this Appeal with the *Philadelphia Newspapers* decision, *supra*.  There, the Third Circuit ruled that an appeal was not equitably moot (even though that case, unlike this Appeal, did arise from a confirmation objection), because a ruling in favor of the appellants in connection with their disputed administrative expense claims would not upset the plan.  *Phila. Newspapers*, 690 F.3d at 170.  While the Court noted that the plan had been substantially consummated, granting the relief requested in the appeal would merely require the debtors to pay the disputed administrative expense claims.  *Id*. Here, similarly, the relief requested in this Appeal would only require the Debtors to pay

the Royalty, if and to the extent they sell Acthar Gel post-confirmation.  Granting Sanofi relief will not upset any aspect of the Joint Plan.

**Public Policy Regarding Finality**.  Principles of public policy do not support application of the equitable mootness doctrine to this Appeal.  Permitting the Debtors to continue selling Acthar Gel without honoring the Royalty, which they acknowledge as part of the "cost of goods sold," would provide an unjustifiable windfall that is inconsistent with principles of public policy.  The Debtors suggest that granting Sanofi relief in this Appeal would somehow create a "bankruptcy discount," though the Debtors fail to explain what that means or how it applies in this case.  Granting relief in this Appeal will not provide any discount – it merely addresses a legal conclusion drawn by the Bankruptcy Court about the nature of post-confirmation Royalty obligations and would merely restore one of the Debtors' "costs of goods sold," rather than rendering a windfall to the Debtors.

Similarly, the Debtors' discussion of settlements between Guaranteed Unsecured Noteholders and opioid claimants regarding allocation of equity interests in the Debtors has nothing to do with this Appeal.  The Debtors argue that this "kind of settlement cannot happen without high confidence in the finality of **confirmation orders** and the resulting marketing of equity securities." Motion, at 21 (emphasis added).  Even if the Debtors' unsupported assertion regarding investor motivation is correct, the finality of the confirmation order is not jeopardized by this Appeal,

which does not seek reversal of the confirmation order.  The Debtors' attempt to expand the equitable mootness doctrine to bankruptcy court rulings outside the context of confirmation is contrary to the public policy of deciding appeals where equitable mootness is a narrow exception to be judiciously applied.

## **CONCLUSION**

WHEREFORE, Sanofi respectfully asks that the Court deny the Motion, and grant such other and further relief as the Court deems warranted.

Dated: July 22, 2022

**DLA PIPER LLP (US)**

*/s/   Stuart M. Brown*
Stuart M. Brown (DE #4050)
Aaron S. Applebaum (DE #5587)
1201 North Market Street, Suite 2100
Wilmington, DE  19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
E-mail:  stuart.brown@us.dlapiper.com
            aaron.applebaum@us.dlapiper.com

- and -

Ilana H. Eisenstein
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia PA  191903-7300
Telephone:  215-656-3300
Email:  ilana.eisenstein@us.dlapiper.com

*Attorneys for sanofi-aventis U.S. LLC*

## **RULE 8015(h) CERTIFICATION**

Pursuant to Fed. R. Bankr. P. 8015(h), I certify that this document complies with the Type-Volume Limitation of Fed. R. Bankr. P. 8013(f)(3)(A).   This document contains 4,483 words, excluding parts of the document excluded by Fed. R. Bankr. P. 8015(g).

Dated: July 22, 2022                         */s/   Stuart M. Brown*

## **REQUEST FOR ORAL ARGUMENT**

Sanofi respectfully requests that the Court schedule oral argument with respect to the *Reorganized Debtors' Motion to Dismiss Appeal as Equitably Moot* [D.I. 21].

Dated: July 22, 2022                         */s/   Stuart M. Brown*

21